FILED

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

98 JUN -3 AM 8: 58

U.S. DISTRICT COURT
N.D. OF ALABAMA

VELYN IRONES,

    Plaintiff

vs.

THE BIRMINGHAM BOARD OF
EDUCATION, et al.,

    Defendants

CIVIL ACTION NO.

CV-97-AR-573-S

Cho

ENTERED

JUN 3 1998

## MEMORANDUM OPINION

Presently before the court is a motion for summary judgment
filed by the defendants, the Birmingham Board of Education
("Board") and Willie Burkhalter ("Burkhalter"), in this sex
discrimination case brought by the plaintiff, Velyn Irones
("Irones"). Irones asserts claims against the Board pursuant to
Title VII, 42 U.S.C. § 2000e, *et seq.* and she asserts claims
against Burkhalter in his individual capacity, pursuant to 42
U.S.C. § 1983. Because there are genuinely disputed material
issues of act, the court finds that summary judgment for the
defendants is inappropriate.

## I. FACTS

Irones began working for the Board as a senior clerk typist
in 1980. Almost eleven years later the Board promoted her to the
position of Senior Inventory Clerk. Later Irones served as the
Acting Inventory Accountant for approximately four years. The

29

current dispute revolves around the selection process for the permanent Inventory Accountant position.

In February 1996, the Board posted a job vacancy notice for the Inventory Accountant position. The notice indicated that applicants should be able to type and should have <u>at least ten years business office experience</u>. Irones applied for the position and survived the first round of interviews, which were conducted by Burkhalter, who is a Personnel Coordinator for the Board. Burkhalter and two other male Board employees interviewed the remaining group of candidates, which consisted of both males and females. The interviewing committee unanimously recommended a male, Paul Mitchell ("Mitchell") for the position. The Board later accepted the recommendation and offered the position to Mitchell, who had inventory experience as well as retail sales and management experience.

## II.   SUMMARY JUDGMENT STANDARD

Under F.R.Civ.P. 56(c), summary judgment is appropriate where "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law."

2

### III. THE PLAINTIFF HAS ESTABLISHED A PRIMA FACIE
### CASE OF DISCRIMINATION

Irones can establish a prima facie case of discrimination if she can show: 1) that she is a member of a protected group, 2) that she was qualified for the position, 3) that she was rejected despite her qualifications, and 4) that Mitchell had lessor or equal qualifications.[1] *See Carter v. Three Springs Residential Treatment*, 132 F.3d 635, 642 (11th Cir. 1998) (citation omitted). The defendants contend that Irones cannot make out a prima facie case of discrimination because, *inter alia*, she has presented no evidence that she was "more or better qualified" than Mitchell.

The court finds it hard to believe that the defendants wasted three pages of paper making meritless arguments on this point. In order to establish her prima facie case, Irones merely needs to show that she was qualified for the job, not that she was "more or better" qualified. *See id.* There is no doubt she can meet this requirement. Not only had Irones held the position for approximately four years, *See Young v. General Foods Corp.*, 840 F.2d 825, 830 n.3 (11th Cir. 1988)(noting that "where a plaintiff has held a position for a significant period of time,

---

[1] Title VII claims and employment discrimination claims asserted under § 1983 are both analyzed under the McDonnell Douglass paradigm. *Arrington v. Cobb County,* 139 F.3d 865, No. 96-9114, 1998 WL 197636, * 9 n.16 (11th Cir. 1998).

3

qualification for that position sufficient to satisfy the test of a prima facie case can be inferred") (citation omitted), but defendant Burkhalter admitted in his deposition that Irones was qualified for the position. (Pl.'s Ex. 14, Burkhalter Dep. at 88.) Therefore Irones has established a prima facie case of discrimination.

## II. DEFENDANTS'S LEGITIMATE NON-DISCRIMINATORY REASON FOR SELECTING MITCHELL

Because Irones has established a prima facie case for discrimination the burden of production (not the burden of persuasion) shifts to the defendants to come forward with a legitimate non-discriminatory reason for recommending Mitchell. *See Trotter v. Board of Trustees of University of Alabama*, 91 F.3d 1449, 1454 - 55 (11th Cir. 1996). If the defendants can supply such a reason, the burden shifts back to Irones to produce admissible evidence from which a jury might find that the defendants' proffered reason is pretextual. *See id.* Defendants offer Mitchell's superior job qualifications as their legitimate non-discriminatory reason for selecting him rather than Irones. Specifically, the defendants assert that Mitchell's experience in sales, management and inventory made him more qualified for the position than Irones.

4

In an attempt to show pretext, Irones makes several
arguments.  First Irones contends that the defendants failed to
show that, at the time of the interview, they were aware Mitchell
met the minimum qualifications for the position.  *See Turnes v.
AmSouth Bank, NA,* 36 F.3d 1057, 1062 (11th Cir. 1994) (holding
that the employer cannot satisfy its burden of production by
offering a justification based upon information which it did not
know at the time of the challenged employment decision).
Although the committee had a copy of Mitchell's resume during the
interview, Burkhalter does not recall whether he or any committee
member determined how many years of business office experience
Mitchell had.  (Pl.'s Ex. 14. Burkhalter Dep. at 27, 28, 29, 30,
31, 32.)   In addition, Burkhalter is uncertain whether anyone
ever verified Mitchell's employment or his reasons for leaving
his past jobs.  (Burkhalter Dep. at 30, 32.)


While such evidence does raise some concerns about the
thoroughness of the defendants' hiring practices, it does not
suggest discriminatory animus.[2]  Assuming the veracity of
Mitchell's resume, he clearly had the type of experience
necessary for the position.  From 1982 until 1990, Mitchell was a

---

[2] Irones does not allege that defendants verified the resumes and
backgrounds of female applicants, but failed to do so for Mitchell or other
male applicants.

retail manager responsible for inventory, quality control,
payroll, staffing and other duties. (Pl.'s Ex. 7, Mitchell
Resume.) He was a buyer/sales associate from 1992 until 1994.
*Id.* In that position, Mitchell was responsible for departmental
management, purchasing, inventory and employee training, among
other duties. *Id.* Thus, even though Mitchell did not have ten
years of traditional "business office" experience, he obviously
had worked for ten years in an environment where he gained the
skills one acquires in an office, as well as more advanced
skills. In addition, he had over ten years of actual inventory
experience; Irones cannot genuinely dispute that such experience
is appropriate for an inventory accountant position. When the
interviewers met with Mitchell they had a copy of his resume
which described his relevant experience. Therefore, the record
does not support Irones's assertion that the Board's legitimate
non-discriminatory reason for selecting Mitchell was contrived
after instigation of this lawsuit.

## IV. PLAINTIFF'S EVIDENCE OF PRETEXT

Irones next attempts to introduce direct evidence of
pretext. Irones contends that a co-worker told her that
Burkhalter said Irones was a good employee but that the Board
needed a man for the position. (Pl.'s Ex. 15, Irones Aff.)
However, this court cannot consider such evidence because the

6

statement by Irones constitutes hearsay to which no exception

applies. *See* F.R.E. 801 - 805. Furthermore, it is unclear from

the record whether the unidentified co-worker actually overheard

Burkhalter make the alleged statement or the co-worker overheard

someone else attribute the statement to Burkhalter. (*See* Pl.'s

Ex. 15, Irones Aff.) Thus, the circumstances surrounding

Burkhalter's alleged statement could involve numerous levels of

hearsay, none of which Irones has attempted to show are

admissible. As inadmissable hearsay, this court is unable to

consider the statement as evidence of pretext.


Although Irones testified during her deposition that nothing

untoward occurred during her interview, (Irones Dep. at 90.), she

now points to a question Burkhalter asked during the interview as

indirect evidence of pretext. Burkhalter asked Irones what she

would do if she gave the "guys" an order and they refused to

comply. (Pl.'s Ex. 14, Burkhalter Dep. at 52, 55.) Burkhalter

admits that he asked this question because he was curious about

Irones's management style, given that most of the employees in

the inventory department are men. (Pl.'s Ex. 14, Burkhalter Dep.

at 55.) Thus, Burkhalter admits he interjected gender related

concerns into the interview process.


These concerns, alone, do not provide evidence from which a

7

jury could find pretext.  However, the defendants have been
unable to locate Burkhalter's interview notes.  The missing notes
along with his expressed gender concerns do prevent the court
from granting summary judgment for defendants.

## V.  IRONES IS ENTITLED TO AN INFERENCE THAT DEFENDANTS'<br>LEGITIMATE NON-DISCRIMINATORY REASON FOR SELECTING<br>MITCHELL WAS PRETEXTUAL

Irones contends that she is entitled to a presumption of
pre-text because the defendants have apparently lost the
interview Analysis Form Burkhalter completed after the committee
interviewed Irones.[3]  (Pl.'s Ex. 16.)  First, Irones points out
that the defendants had a duty to preserve the documents in
question, pursuant to Equal Employment Opportunity Commission
("EEOC") regulation  29 C.F.R. § 1602.14.[4]  Next, Irones cites to

---

[3]  Also missing are all the evaluations of Irones as Acting Inventory
Accountant.  (Pl.'s Ex. 16.)

[4] The EEOC regulation provides, in pertinent part:

Any personnel or employment record made or kept by an employer
(including but not necessarily limited to requests for reasonable
accommodation, application forms submitted by applicants and other
records having to do with hiring, promotion, demotion, transfer,
lay-off or termination, rates of pay or other terms of
compensation, and selection for training or apprenticeship) shall
be preserved by the employer for a period of one year from the
date of the making of the record or the personnel action involved,
whichever occurs later.... Where a charge of discrimination has
been filed, or an action brought by the Commission or the Attorney
General, against an employer under title VII or the ADA, the
respondent employer shall preserve all personnel records relevant
to the charge or action until final disposition of the charge or
the action.

several cases which purportedly support her argument that lost or destroyed records create a presumption the documents would have bolstered her case. *See Hicks v. Gates Rubber Co.*, 833 F.2d 1406, 1419 (10th Cir. 1987); *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 - 88, 66 S. Ct. 1187, 1192 (1946).

Where a party is unable to produce documents which are relevant to a dispute, the court may infer that the contents of the missing or destroyed documents is unfavorable to the party responsible for production. *Marquis Theater Corp. v. Condado Mini Cinema*, 846 F.2d 86, 90 (1st Cir. 1998). The imposition of this adverse inference is justified for two reasons. First, there is an evidentiary rationale based upon

> the common sense observation that a party who has notice that a document is relevant to litigation and who proceeds to destroy the document is more likely to have been threatened by the document than is a party in the same position who does not destroy the document. The fact of destruction satisfies the minimum requirement of relevance: it has some tendency, however small, to make the existence of a fact at issue more probable than it would otherwise be....
>
> The other rationale for the inference has to do with its prophylactic and punitive effects. Allowing the trier of fact to draw the inference presumably deters parties from destroying relevant evidence before it can be introduced at trial.

*Nation-Wide Check Corp., Inc. v. Forest Hills Distributors, Inc.*, 692 F.2d 214, 218 (1st Cir. 1982) (citations omitted).

---

29 C.F.R. § 1602.14

However, there are limitations on the court's ability to draw such an adverse inference.

> In this circuit, an adverse inference is drawn from a party's failure to preserve evidence only when the absence of that evidence is predicated on bad faith. "Mere negligence" in losing or destroying the records is not enough for an adverse inference, as "it does not sustain an inference of consciousness of a weak case."

*Bashir v. Amtrak*, 119 F.3d 929, 931 (11th Cir. 1997) (citing *Vick v. Texas Employment Comm'n.*, 514 F.2d 734, 737 (5th Cir. 1975))[5] (other citations omitted).  While the Eleventh Circuit has not explained what circumstances might constitute bad faith, the court, in *Bashir v. Amtrak*, did point out the circumstances upon which it relied when it refused to impose an adverse inference. 119 F.3d 929.

The plaintiff, Rashool Bashir ("Bashir") was the personal representative for his son, who was struck and killed by a train. Bashir sued two railroad companies contending, *inter alia*, that the excessive speed of the train proximately caused his son's death.  Defendants sought summary judgment on the excessive speed

---

[5]  The Eleventh Circuit has adopted as precedent all Fifth Circuit Court of Appeals cases decided prior to October 1, 1981.  *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981).

10

claim arguing that the Federal Railroad Safety Act (FRSA)[6]
preempted such claims.  Applying United States Supreme Court
precedent, the district court held that the FRSA preempted the
claim, only if the train was traveling in excess of the federally
imposed speed limit of eighty miles per hour.  *Id.* at 930.

After reviewing the testimony of the train engineer and the
assistant engineer, the district court found that the defendants
had met their initial burden of establishing that there were no
genuinely disputed facts regarding the speed of the train.  *Id.*
The court rejected Bashir's argument that summary judgment was
inappropriate because the defendants' failure to preserve the
train's automatic speed recording tape created an inference
favorable to Bashir's case.  *Id.* at 930 - 31.  Bashir appealed
and the Eleventh Circuit, citing to a lack of evidence regarding
bad faith, upheld the district court:

> [I]t is undisputed that neither [the engineer] nor
> [the assistant engineer] had control over the
> content or fate of the speed tape, or had any
> contact with anyone who did have control over the
> tape;  that both of these witnesses knew that the
> speed of the train was routinely recorded and that
> the tape would thus show the speed of the train at
> the time of the accident;  and thus that at the
> time these two witnesses reported 70 mph to the
> police officer  ...  they necessarily would have
> thought that the speed tape would also evidence
> the speed of the train at the time of the

---

[6]  Formerly, 45 U.S.C. § 421, et seq, now codified at 49 U.S.C. § 20101
*et seq*.

> accident.... [In the face of such evidence,
> Bashir] adduced absolutely no evidence that the
> train was traveling at a speed other than 70 mph.

*Id.* at 932 (emphasis supplied).  Finally, observed the Eleventh

Circuit, neither the engineer or the assistant engineer "had any

motive or opportunity to try to tamper with the tape ...."  *Id.*

Under these circumstances, concluded the court, there was

"<u>exceedingly strong evidence</u> that the train was in fact going 70

mph."  *Id.* (emphasis supplied).  Thus, no reasonable jury could

find that the train was traveling in excess of eighty miles per

hour and therefore "an adverse inference [was] not warranted."

*Id.*


Unlike *Bashir*, an adverse inference is warranted in the

present case because there is evidence of bad faith.  First, the

defendants in the present case had a duty to preserve the

employment record at issue.  29 C.F.R. § 1602.14    The

defendants in *Bashir* had no such duty.  More importantly, unlike

the defendants in *Bashir*, the defendants here did have a motive

and an opportunity to tamper with the missing document.  The

document could have established discriminatory bias on the part

of Burkhalter, thus the defendants had motive.  In addition, they

had an opportunity to tamper with the document which was under

their supervision and control.  Finally, unlike *Bashir*, Irones

introduced some evidence, in addition to the unexplained absence
of the document, to support the adverse inference she champions.
Burkhalter's admitted gender concerns, along with the inference
created by the missing document could support a jury finding that
Burkhalter selected Mitchell based upon impermissible motives.
Here, unlike *Bashir*, the circumstances surrounding the absence of
the document indicate bad faith.  Accordingly, for purposes of
summary judgment, this court must give Irones the benefit of the
adverse inference.  *See Stanton v. National Railroad Passenger
Corp.*, 849 F. Supp. 1524, 1528 (M.D. Ala. 1994) (applying the
adverse inference rule where there was a question of fact
regarding the defendants' motivation for destroying a railroad
tape and defendants could not explain the circumstances
surrounding the destruction of the tape)(cited with approval in
*Bashir*, 119 F.3d at 932 - 33)


Defendants counter by arguing that any adverse inference, to
which Irones may be entitled, does not preclude summary judgment
in their favor.  Because two of the three original Interview
Analysis forms support the committee's selection of Mitchell,
defendants essentially argue that any discriminatory animus by
Burkhalter did not affect the committee's ultimate selection of
Mitchell.  Further, the defendants contend that the committee

13

merely recommended Mitchell for the position.  The personnel
director, interim superintendent and the Birmingham School Board
then accepted the committee's recommendation.  Therefore, Irones
cannot show that a discriminatory motive "more likely motivated"
the School Board's ultimate decision.

    The court agrees that Irones has little chance of proving
that a discriminatory motive "more likely motivated" the Board.
What defendants have conveniently forgotten, however, is that
this court cannot grant summary judgment if there is evidence
from which a jury might find that gender was "a motivating factor
for any employment practice, even though other factors also
motivated the practice."  Canup v. Chipman-Union, Inc., 123 F.3d
1440, 1441 - 1442 (11th Cir. 1997) (citing 42 U.S.C. §§ 2000e-
2(m), 2000e-(5)(g)(2)(B)) (emphasis supplied).  Even if the
defendants can show that they would have made the same employment
decision in the absence of the alleged bias, Irones may seek
declaratory relief, injunctive relief and attorney's fees, if she
can show that discrimination was "a motivating factor."  Canup,
123 F.3d at 1442 (citing 42 U.S.C. § 2000e-(5)(g)(2)(B))
(emphasis supplied).[7]

_____

    [7]  The court notes that an award of relief under 42 U.S.C. § 2000e-
(5)(g)(2)(B) is within the court's discretion.

> The upshot of [Title VII's mixed motive provisions] is
> that once the plaintiff has presented evidence
> reasonably suggesting that her race, sex, religion, or
> national origin played a motivating role in her
> discharge, summary judgment will rarely (if ever) be
> appropriate; for even if the employer can eliminate
> all doubt at that point as to whether it would have
> taken the same action without considering the
> proscribed criterion, the plaintiff still might obtain
> limited relief.

*Venters v. City of Delphi*, 123 F.3d 956, 973 n.7 (7th Cir. 1997)

(emphasis supplied). Finally, the record suggests that the

superintendent and the School Board primarily based their

approval of Mitchell on the committee's recommendation. *Cf.*

*Holifield v. Reno*, 115 F.3d 1555, 1563 - 64 (11th Cir. 1997)

("The biases of one who neither makes nor influences the

challenged personnel decision are not probative in an employment

discrimination case.") Given that the recommendation may have

been tainted by bias, summary judgment for the defendants is not

appropriate.[8]

## VII. CONCLUSION

This court finds that there is evidence of bad faith

---

[8] Irones also maintains, as evidence of pretext, that the defendants did not give Mitchell a typing test, even though typing skills were listed as a job requirement in the job vacancy announcement. However, Irones supports this assertion by citing to her affidavit where she states "[u]pon information and belief I do not believe Paul Mitchell was required to take a typing test ...." (Pl.'s Ex. 15, Irones Aff.) (emphasis supplied). Such evidence does not create a genuine issue of material fact.

surrounding the absence of Burkhalter's interview notes.
Therefore this court applies an adverse inference that the
document would have supported Irones's contention that gender
bias was "a motivating" factor in the selection of Mitchell for
the position of Inventory Accountant.  Accordingly, summary
judgment for defendants is inappropriate.[9]


        A separate appropriate order will be entered.
        DONE this _3ʳᵈ_ day of June, 1998.


                              WILLIAM M. ACKER, JR.
                              UNITED STATES DISTRICT JUDGE


_____

        [9]  Asserting claims of qualified immunity, Burkhalter contends that
summary judgment is appropriate inasmuch as Irones brings claims against him
in his individual capacity.  Because Irones has a clearly established right to
remain free from unlawful gender discrimination, the qualified immunity
defense is without merit.

16